# Noecker, Appellant, *v.* Woods.

*Constitutional law—Constitution of Pennsylvania—Schedule to the Constitution, Sec. 14—Judicial districts—Designation—Act of April 24, 1917, P. L. 95—Validity.*

1. Section 14 of the Schedule to the Constitution of Pennsylvania, providing that the general assembly shall at the next succeeding session after each decennial census and not oftener, designate the several judicial districts as required by this Constitution, is mandatory in form, and indicates a clear intention on the part of the framers of the Constitution, and of the people who adopted it, that judicial apportionment acts are to be passed at definitely designated sessions of the legislature.

2. What the Constitution specifically requires to be done by the legislature at a definitely designated session cannot be done at any other.

3. It is always to be presumed that the legislature performs the duties enjoined upon it by the Constitution, and when a session immediately succeeding a decennial census is allowed to pass without the enactment of a judicial apportionment act, a fair presumption is that the legislature intended to readopt the existing judicial apportionment for the succeeding ten years. In such

case the judicial districts of the State as then constituted must continue until the session next succeeding the next decennial census.

4. The Act of April 24, 1917, P. L. 95, designating the several judicial districts of the Commonwealth and providing for the election and commission of judges learned in the law therefor, violates Section 14 of the Schedule to the Constitution, in that it was not passed at the next session of the legislature succeeding a decennial census and is void.

Argued June 30, 1917.  Appeal, No. 5, May T., 1918, by plaintiff, from decree of C. P. Dauphin Co., Equity Docket No. 603, and Commonwealth Docket, 1917, No. 94, dismissing bill in equity for an injunction in case of F. M. Noecker v. Cyrus E. Woods, Secretary of the Commonwealth of Pennsylvania.  Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.  Reversed.

Bill in equity for an injunction.  Before KUNKEL, P. J., and McCARRELL, J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill.  Plaintiff appealed.

*Error assigned* was the decree of the court.

*J. E. B. Cunningham,* with him *Spencer Gilbert Nauman, B. F. Geary* and *C. H. Bergner,* for appellant.— The legislature of Pennsylvania has no power to designate the several judicial districts of the State, except at a session next succeeding a decennial census.

The Act of April 24, 1917, P. L. 95, is violative of Section 14 of the Schedule of the Constitution: Com. ex rel. Chase v. Harding et al., 87 Pa. 343; Com. ex rel. Burns v. Handley et al., 106 Pa. 245; Com. ex rel. v. Heck, 251 Pa. 39; Rumsey v. People, 19 N. Y. 41; State ex rel. Meighen v. Weatherill, 147 N. W. Repr. 105; People ex rel. Carter v. Rice, 135 N. Y. 473; In re Reynolds, 202 N. Y. 430.

*William H. Keller,* First Deputy Attorney General, with him *Francis Shunk Brown,* Attorney General, for appellee.—The Judicial Apportionment Act of April 24, 1917, P. L. 95, is not in contravention of Section 14 of the Schedule to the Constitution.

The case of Commonwealth ex rel. v. Heck, 251 Pa. 39, is distinguishable from the case at bar.

The Constitution does not require that the legislature shall make a new judicial apportionment every ten years and at no other time, but only that it shall not make a judicial apportionment oftener than once after each decennial census: Com. v. Clark, 7 W. & S. 127; Com. v. Maxwell, 27 Pa. 444; Rumsey v. People, 19 N. Y. 41; State ex rel. Meighen v. Weatherill, 147 N. W. Repr. 105; In re Reynolds, 96 N. E. Repr. 87; People ex rel. Heffernan v. Carlock, 65 N. E. Repr. 109; People ex rel. Carter v. Rice, 31 N. E. Repr. 921; Legislative Reapportionment, 21 Pac. Repr. 480.

PER CURIAM, July 20, 1917:

And now, July 20, 1917, the court being of opinion that the Act of Assembly, approved April 24, 1917, entitled "An act to designate the several judicial districts of the Commonwealth as required by the Constitution, and to provide for the election and commissioning of judges learned in the law in said districts," is unconstitutional and void, the decree of the court below is reversed, the demurrer to appellant's bill is overruled, and Cyrus E. Woods, secretary of the Commonwealth, is restrained and enjoined from sending to the county commissioners of Clinton County a notice designating the office of judge of the Court of Common Pleas of the 57th judicial district, as an office for which candidates are to be nominated in Clinton County at the fall primary in the year 1917, the costs below and on this appeal to be paid out of funds of the Commonwealth under the control of the appellee. An opinion setting forth the reasons for this decree will be filed at a later date.

OPINION BY MR. CHIEF JUSTICE BROWN, October 15, 1917:

On April 24, 1917, the Governor approved an act of assembly, entitled "An act to designate the several judicial districts of the Commonwealth as required by the Constitution and to provide for the election and commissioning of judges learned in the law for the said districts." The fourteenth section of the schedule of the Constitution, which is a substantive part of that instrument, provides that "The General Assembly shall, at the next succeeding session after each decennial census and not oftener, designate the several judicial districts as required by this Constitution." Notwithstanding this plain provision, the general judicial apportionment Act of July 18, 1901, dividing the State into fifty-six judicial districts, was still in force when the legislature met this year. The only change made by the Act of April 24, 1917, in the districts as designated by the Act of 1901, is the creation of Clinton County as a separate judicial district. It has a population of less than forty thousand, and, at the time of the approval of the Act of 1917, formed, with Cameron and Elk Counties, the twenty-fifth judicial district. By the Act of 1917 it is made the fifty-seventh. F. M. Noecker, one of its resident taxpayers, filed a bill in the court below, averring that the Act of 1917 is unconstitutional, (1) in that it is violative of the fourteenth section of the schedule of the Constitution, and (2) because it violates Section 5, Article V, of the Constitution, which provides as follows: "Whenever a county shall contain forty thousand inhabitants it shall constitute a separate judicial district, and shall elect one judge learned in the law: and the General Assembly shall provide for additional judges, as the business of the said districts may require. Counties containing a population less than is sufficient to constitute separate districts shall be formed into convenient single districts, or, if necessary, may be attached to contiguous districts as the General Assem-

bly may provide." The prayers of the bill are for a
decree declaring the Act of 1917 unconstitutional and
void, and enjoining the secretary of the Commonwealth
from giving notice to the county commissioners of Clinton County that the office of judge of the Court of Common Pleas of the fifty-seventh judicial district is an office for which candidates are to be nominated in said
county at the fall primary of the present year. To this
bill the attorney general demurred, on the ground that
the Act of 1917 is constitutional. The demurrer was
sustained under a stipulation that the action of the
court on the demurrer should be regarded as a final disposition of the case. On this appeal from the dismissal
of the bill the same objections to the constitutionality
of the Act of 1917 are renewed.

The words, "the General Assembly shall, at the next
succeeding session after each decennial census and not
oftener, designate the several judicial districts as required by this Constitution," are mandatory in form,
and indicate a clear intention on the part of the framers
of the Constitution, and of the people who adopted it, that
judicial apportionment acts are to be passed at definitely
designated sessions of the legislature. The reason for
this requirement is obvious. The judicial apportionment of the State has for its basis the population of the
various counties, and the one session of the legislature
at which an apportionment can be made with fairness
and a degree of accuracy is the one next succeeding the
taking of a decennial census. If a judicial apportionment act can be passed at any session of the legislature
succeeding the one immediately following such a census,
the words, "the next succeeding session," are utterly
without meaning. They were used for a purpose which
is not to be thwarted by giving them the strained meaning of "at any succeeding session." They mean, in common parlance, "immediately succeeding," or "immediately following," and are to be so interpreted. It is,
therefore, to be concluded that what the Constitution

specifically requires, for a very good reason, to be done by the legislature at a definitely designated session, cannot be done at any other. It is always to be presumed that the legislature performs the duties enjoined upon it by the Constitution, and when a session immediately succeeding a decennial census is allowed to pass without the enactment of a judicial apportionment act, a fair presumption is that the legislature intended to readopt the existing judicial apportionment for the succeeding ten years; but, be this as it may, the legislature not having passed a judicial apportionment act at the session of 1911, the judicial districts of the State as now constituted must continue until the session of 1921.

Nothing decided in Com. v. Clark, 7 W. & S. 127, and Com. v. Maxwell, 27 Pa. 444, two of our cases cited by the learned attorney general and his deputy is in conflict with the foregoing view. The eighth section of the sixth article of the amended Constitution of 1838 declared that all officers whose election or appointment was not provided for in that instrument should be elected or appointed as might be directed by law. The election or appointment of canal commissioners was not provided for in the Constitution, and it was therefore to be provided for by law. By section eleven of the schedule appended to the Constitution it was provided that the appointing power should remain as theretofore; that all officers in the appointment of the executive department should continue in the exercise of the duties of their respective offices until the legislature should pass such laws as might be required by the eighth section of the sixth article of the Constitution. The same section of the schedule directed that those laws were to be enacted by the first legislature under the amended Constitution. In Commonwealth v. Clark, Clark was elected a canal commissioner in 1843, under the provisions of an act of assembly passed April 18th of that year, providing for the election of canal commissioners. The proceeding to oust him was instituted on the ground that the said act of assembly was wholly un-

constitutional and void, because it had not been en-
acted by the first legislature that met after the Consti-
tution had been amended. If the language in the sched-
ule which so provided had been construed as mandatory,
and the contention of the Commonwealth had prevailed,
the eighth section of the sixth article of the Constitution
could never have been given effect. If, under our Con-
stitution, a legislature, at a session next succeeding the
taking of a decennial census shall not apportion the
State into judicial districts, there will be a disregard of
mandatory provision of the Constitution, but such dis-
regard will not affect the constitutional direction that
judicial power in the lower courts shall be administered
through judicial districts. What is said of Common-
wealth v. Clark applies equally to Commonwealth v.
Maxwell. The several cases from other jurisdictions
cited by counsel for appellee are all distinguishable
from the one now under consideration. A reference
to a single one will suffice. In State v. Weth-
erill, 147 N. W. Repr. 105 (Minnesota), the court said:
"The difference between the language of our Constitu-
tion and that of the constitution of the other states is
found in the fact that by the language of the latter the
legislature is commanded to make the reapportionment
at the first session after the census, while in our State
the language is that the legislature shall have the power
to reapportion at that session." The words "shall have
the power" merely authorize; the word "shall" is man-
datory.

We have distinctly and most properly held that the
life of a judicial apportionment act is ten years. "Now
we are prepared to see the relevancy and effect of the
fourteenth section of the schedule, which seems to be
out of place, but which has no ambiguity in its inter-
pretation. It reads thus: 'The General Assembly shall
at the next succeeding session after *each* decennial cen-
sus, and *not oftener,* designate the several judicial dis-
tricts, as required by this Constitution.' The italics I

have made mark its operation. The duty recurs after *each* census, but not oftener. It is evident the convention intended to confine the *arrangement* of districts to *decennial* periods when the *census* would authoritatively, and with certainty, declare the population of each county": AGNEW, C. J., in Commonwealth ex rel. Chase v. Harding, 87 Pa. 343. A few years later, in Commonwealth ex rel. Burns v. Handley, 106 Pa. 245, Mr. Justice CLARK thus refers to the Harding case: "In Commonwealth ex rel. Chase v. Harding, 6 Norris 343, it was decided that this provision, when a county attains that number of inhabitants, does not of itself constitute it a separate district; but simply indicates a certain basis upon which, at the proper time and in the proper manner, judicial districts may be declared by the legislature. This was the precise question settled in that case; that it was correctly decided we have no doubt......'The General Assembly shall, at the next succeeding session after each decennial census, and not oftener, designate the several judicial districts, as required by this Constitution.' This section belongs properly to the body of the Constitution; it is not, in any proper sense, a schedule provision; it was not intended merely to bridge the space between the old and the new systems; it is an important member of the system itself. Its design is to provide for a designation of the several judicial districts throughout the Commonwealth at regular or periodical intervals of ten years, and to prohibit any further or other designation within these decennial periods. The arrangement of judicial districts, thus provided for, is a conclusive one; it cannot be afterwards disturbed or interfered with during the period for which it is declared." Following the two foregoing cases the writer said, with the approval of the entire court, in Commonwealth ex rel. Brown v. Heck, 251 Pa. 39, that the judicial districts of the State cannot be changed by the legislature, session after session, but only at intervals of ten years, as the changes in popula-

tion may require. With it thus definitely settled that a judicial apportionment act cannot be changed within the ten years succeeding its passage, if the legislature, at the recent session, had passed such a valid act, it would have to continue until 1927, and the legislature to assemble in 1921—the year after the decennial census of 1920—could not obey the constitutional direction to then designate the several judicial districts of the State. That duty can be then performed with the unconstitutional Act of 1917 out of the way.

As, for the reason stated, the Act of April 24, 1917, is in violation of a constitutional requirement, the second objection to its constitutionality need not be considered. In support of the decree of July 20, 1917, this opinion is filed.