## Crane's Appeal et al.

Argued May 12, 1942. Before MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Frank J. Flannery,* with him *Patrick J. Flannery,* for appellants.

*Charles A. Shea, Jr.,* for appellees, was not heard.

OPINION BY MR. JUSTICE MAXEY, May 25, 1942:

This is an appeal from the order of the Court of Quarter Sessions of Luzerne County making absolute a rule to declare vacant the office of Township Supervisor in the Township of Pittston, Luzerne County, held by Joseph Crane, Pietro Morganti and John Fear, and declaring the offices vacant.

On March 9, 1940, a petition was filed under Section 503 of the Act of May 1, 1933, P. L. 103 (53 P. S. 19093-503), known as the Second Class Township Law, for the removal of the three Supervisors of the Township. Prior to the filing of the petition, John Fear ,one of the named respondents, resigned and the case continued against the other two, Joseph Crane and Pietro Morganti.

The petition contained numerous counts and charges and testimony was offered in an effort to substantiate them; the trial court disregarded all but two, and held that because the respondents had failed to comply with Sections 902 and 518 of the Second Class Township Law (53 P. S. 19093-902 and 19093-518), they should be removed.

Section 3 of the Act of May 1, 1933, P. L. 103, as amended by the Act of June 5, 1937, P. L. 1738 (53 P. S.

19093-902), provides: ". . . In all townships in which the estimated expenditures in the budget exceed five thousand dollars ($5,000) the board of supervisors SHALL within fifteen days after the adoption of the budget, file a copy of the same in the office of the Department on Internal Affairs." The court below in its opinion states: "It is admitted that, in fact, such copy of the budget was never filed. Respondents allege that the matter of filing a copy of the budget was left in the hands of the Township Solicitor, now deceased, and through his over-sight or failure to act, the same was not filed. Respondents' Counsel concedes, that if the requirement for the filing of the copy of the budget in the office of the Department of Internal Affairs is mandatory, respondents must be removed from office." Section 518 of the Act of May 1, 1933, supra, Article V (53 P. S. 19093-518), provides: "The board of township supervisors SHALL annually, on or before the first day of February in each year, make a sworn statement to the State Department of Highways, on blanks furnished to them by the department, of the whole amount of tax levied during the preceding year for road purposes, and the total amount of road taxes collected during the year. They shall specify in such report the amount expended for maintenance or repairs of roads, for opening and building new roads and for macadamizing or otherwise permanently improving roads, the number of miles of roads thus made, and the total number of miles of township roads in the township. Such report shall also contain the names and addresses of the chairman, members, and secretary and treasurer of the board, and such other matters and things as the State Department of Highways may require." It is conceded that this act also was not complied with.

The only question before the court below and before us is whether the requirements in the Acts just cited are *mandatory*. It should be noted that both of these Acts contain the imperative verb "shall". Appellants' statement of the question involved reads as follows: "Is the

failure of Supervisors of a Township of the Second Class to file a copy of the budget in the office of the Department of Internal Affairs, as required by Section 902 of the Act of May 1, 1933, P. L. 103 (Second Class Township Law), and the failure to make a sworn statement to the State Department of Highways as required by Section 518 of the same act, cause for removal of the supervisors under Section 503 of that act?"

We must answer this question, as did the court below, in the affirmative. The duties breached by the respondents were mandatory. The ordinary signification of the verb "shall" as used in the acts cited is imperative and not permissive unless the latter meaning is required by the context. Here there is no such contextural requirement. The verb "shall" in a statute is mandatory beyond all doubt when the public welfare requires that it be given such meaning. The duties commanded of these respondents in the acts cited are duties whose performance are obviously vital to the public welfare. When these duties are not performed, mismanagement of the township affairs is the usual corollary and fraud and corruption are thereby facilitated. For cases holding that the verb "shall" when used in constitutions and statutes leaves nothing to discretion, see *Noecker v. Woods*, 259 Pa. 160, 102 A. 507; *Lynn v. Lynn*, 256 Pa. 563, 566, 100 A. 975; *Deibert v. Rhodes*, 291 Pa. 550, 554, 140 A. 515; *People v. O'Rourke*, 124 Cal. App. 752, 13 P.2d 989; *Foley v. City of Orange*, 91 N. J. L. 554, 103 A. 743; *Baer v. Gore*, 79 W. Va. 50, 90 S. E. 530.

It is obvious that the respondents cannot be excused for failure to perform a mandatory duty imposed by law upon them, by an averment that the matter "was left in the hands of the Township Solicitor, now deceased", and that they "believed that copies of said budgets had been forwarded to the Department of Internal Affairs by the said Solicitor". When a public official entrusts the performance of one of his duties to a subordinate, he must exercise his supervisory power to see to it that the duty is discharged.

The court below permitted a reargument in this case and it was then and there urged that the respondent Crane, who was reëlected Supervisor in November 1939 for a second term beginning in January 1940, should not be removed from office for a dereliction occurring in his first term. Respondent cited the case of *Fudula's Petition*, 297 Pa. 364, 147 A. 67, in which this court held that "the misconduct justifying removal [from public office] must be committed during the current term." On this phase of the case, the court below aptly said: "The filing of the statement for 1939 at any time during that year and up until February 1, 1940, would have constituted compliance with the Act. Inasmuch as the same was not filed in 1939, it was Crane's duty to see that the statement was filed in January, 1940. His failure so to do constituted a dereliction of duty committed during his present term, which began in January, 1940. We think it clear that Morganti was guilty of the neglect of two mandatory duties, and that Crane was guilty of one."

The judgment is affirmed.