## Branham v. Rohm and Haas Company

190

*Aaron J. Freiwald,* for plaintiff.

*Dennis R. Suplee, Ralph G. Wellington, Jennifer A.L. Battle* and *Kate A. Kleba,* for defendants Rohm and Haas, Morton Chemical Co. and Huntsman Corp.

*Albert G. Bixler* and *Elizabeth S. Gallard,* for defendant Modine Manufacturing.

TERESHKO, *J.,* June 4, 2010—Appellant, non-party Dow Chemical Company, appeals this court's findings and order dated April 26, 2010, denying its motion to quash the subpoena of plaintiff Joanne Branham, individually and as administratrix of the estate of Franklin Branham to compel the appearance of a Dow corporate designee for the purpose of securing trial testimony on the issue of how certain epidemiological studies were conducted.

## FACTUAL BACKGROUND

This is one of 30 individual actions involving claims that chemical contamination from a chemicals manufacturing facility in Northern Illinois caused brain cancers and brain tumors in residents of a small, lakeside community approximately one mile away. Mr. Branham was one of three next-door neighbors diagnosed with a rare form of brain cancer in the same year. He died in 2004. As with the other individual plaintiffs, plaintiff, in this case, claims that Mr. Branham's brain cancer was caused by exposure to vinyl chloride, which is a human carcinogen, and that this exposure came about through contaminated groundwater and air.

192

The cases are pending in Philadelphia County Court of Common Pleas because Rohm and Haas Chemical Company is headquartered in Philadelphia. The chemical plant in Illinois was owned and operated by Morton Chemical Company during the 1950s through 1999, when Morton was acquired by Rohm and Haas. Rohm and Haas, in turn was acquired by Dow in April 2009. The first eight cases filed were consolidated by this court and the Branham case was designated the lead case. Mr. Branham's case is schedule for trial to commence on June 7, 2010.

The dispute that leads to this appeal involves plaintiff's March 3, 2010 service of a subpoena on Dow's statutory agent in Pennsylvania purporting to compel Dow to designate one or more witnesses to give a videotaped testimony on May 13, 2010 for use at trial in this case on the subjects of cancer research epidemiology studies (Mundt study) in which Dow, Union Carbide Corporation (UCC) and a dozen or more other U.S. manufacturers of polyvinyl chloride plastic and vinyl chloride monomer participated in the 1970s, 1980s and 1990s. On March 26, 2010 Dow filed its motion to quash the subpoena arguing, inter alia, that this court lacks personal jurisdiction over Dow to enforce the subpoena. (Dow motion to quash, control no. 10033269, pp. 3-10.)

On April 15, 2010, plaintiff filed her response and Dow filed a reply on April 23, 2010.

On April 26, 2010, this court entered its findings and order, which addressed this issue in addition to other issues. (Attached hereto as exhibit A.) This court denied Dow's motion to quash the subpoena. A corrective entry order was entered on May 5, 2010.

On April 29, 2010, Dow filed its appeal to the Superior Court and an application for emergency relief requesting a stay of the this court's April 26, 2010 findings and order pending disposition of this appeal. Plaintiff/appellee filed a motion to quash the appeal, which was subsequently denied on May 11, 2010 and Dow's application for emergency stay was granted. In addition, an application to expedite was filed by plaintiff and granted by the Superior Court by order dated May 13, 2010. Dow subsequently issued its statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The issue to be addressed on appeal is:

"Whether this court abused its discretion in granting denying Dow's motion to quash the subpoena to compel a Dow corporate designee for the purpose of securing trial testimony on the issue of how certain epidemiological studies were conducted."

## LEGAL ANALYSIS

On review of a challenge to the disposition of a motion to quash a subpoena, our Superior Court has stated:

"Whether a subpoena shall be enforced rests in the judicial discretion of the court. We will not disturb a discretionary ruling of a [trial] court unless the record demonstrates an abuse of the court's discretion. So long as there is evidence which supports the [trial] court's decision, it will be affirmed. We may not substitute our judgment of the evidence for that of the [trial] court." *Slusaw v. Hoffman*, 861 A.2d 269, 272, (Pa. Super 2004) (citing *In re Subpoena No. 22*, 709 A.2d 385, 387 (Pa. Super. 1998).

On March 3, 2010, plaintiff issued and served a subpoena on Dow. (Plaintiff s memorandum of law in opposition to Dow's motion to quash, p. 3.) The subpoena compelled the appearance of a corporate designee to testify about certain Dow vinyl chloride workers who died of brain cancer but were never reported to Dr. Kenneth Mundt or any of the other epidemiologists, who studied the vinyl chloride industry-wide cohort (Epidemiological study of men employed in the vinyl chloride industry between 1942 and 1972, final report.) The industry-wide vinyl chloride study included three Dow plants. (Plaintiff's memorandum of law in opposition to Dow's motion to quash, p. 3.)

According to the documents collected by plaintiff, Dow plant personnel collected the cohort information and determined who met the inclusion criteria for the study and reported that information back to the study investigators. *Id.* Plaintiff contends that, through discovery and a review of publicly available documents, there is a substantial record showing that the Dow plants failed to report a number of cases of brain cancer to Dr. Mundt, which resulted in underestimating the association between vinyl chloride exposure and brain cancer. *Id.* at p. 4. Plaintiff's subpoena seeks trial testimony relating to the three Dow plants and the information provided, and not provided, to Dr. Mundt and other epidemiologists.

Dow argues that the subpoena to compel the trial testimony of a Dow corporate designee should be quashed. Dow cites the following reasons in support of its argument: (1) Dow is not a resident of the Commonwealth and therefore the subpoena cannot be enforced; (2) the

subpoena seeks expert testimony and is unduly burdensome on Dow; (3) the subpoena seeks the disclosure of confidential employee records and health information. (Dow motion to quash, control no. 10033269, pp. 3-10.)

First, Dow argues that it is not subject to Pennsylvania's subpoena power because it is not a resident of Pennsylvania. (Dow reply memorandum in further support of motion to quash, p. 1.) Dow argues that a corporation's "residence" is exclusively the state in which it is incorporated which is Delaware. *Id.*

By definition, the residence of a corporation is defined as "the place where a corporation or other enterprise does business or is registered to do business." Black's Law Dictionary, (8th ed. 2004). Pennsylvania courts have held that a corporation or person may be a resident of many states because "a domicile and a residence are not interchangeable terms." *Springfield Township v. Kim,* 792 A.2d 717, 723 (Pa. Commw. 2002) (citing *In re Du Puy's Estate,* 373 Pa. 423, 427, 96 A.2d 318, 319 (1953)). In Pennsylvania, the distinction between domicile and residence is that residence is a question of physical fact, while domicile is a matter of intention. *Id.* (citing *Greenwood v. Hildebrand,* 357 Pa. Super. 253, 259, 515 A.2d 963, 965 (1986)); see also, *Robinson v. Robinson,* 362 Pa. 554, 559, 67 A.2d 273, 275 (1949).

To determine whether a corporation is a resident, the court must look at the corporation's activities within the Commonwealth.

According to 42 Pa.C.S. §5301(a) and §5301(a)(2)(iii) as it applies to corporations states:

"The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

"(a)(2)(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth."

According to 42 Pa.C.S. §5301(a)(2)(iii), the carrying on of a continuous and systematic part of its general business within this Commonwealth provides the courts with sufficient jurisdiction to exercise general personal jurisdiction over a person to, "enable a tribunal to render personal orders against such person." Thus, if Dow is found to demonstrate a "continuous and systemic part of its general business" within the Commonwealth, then the court has jurisdiction over Dow as a resident of Pennsylvania.

The evidence that Dow is a resident of Pennsylvania is overwhelming and thus subjects itself to this court's jurisdiction pursuant to section 5301 and its power to "render personal orders" or enforce subpoenas. Dow has corporate offices, corporate officers, employees and plants in the Commonwealth. Dow occupies a large corporate office building located in Philadelphia, Pennsylvania, along with having corporate officers and its executive leadership committee there as well. (Plaintiffs memorandum of law in opposition to Dow's motion to quash subpoena, p. 8.)

The case law cited by Dow in support of quashing the subpoena is dissimilar to the situation in this case. The courts in each of the cases mentioned by Dow in its motion involved a foreign corporation or person being subpoenaed and essentially neither had any presence within the Commonwealth other than that of a registered agent. The lack of in-state presence rendered them a non-resident and outside the power of the court. See *Syngenta Crop Protection Inc. v. Monsato Co.,* 908 So.2d 121, 124 (Miss. 2005); *Phillips Petroleum Co. v. OKC Ltd. Partnership,* 634 So.2d 1186 (La. 1994); *In re National Contract Poultry Growers' Association,* 771 So.2d 466 (Ala. 2000); *AARP v. American Family Prepaid Legal Corp. Inc.,* 2007 WL 2570841 (N.C.Super. 2007).

Although Dow does cite one Pennsylvania case in its argument where a subpoena was quashed, *Simon v. Simon,* 6 D.&C.3d 196 (Phila. Cty. 1977), the case was determined prior to enactment of section 5301 and involved a non-resident. In fact, the statute that the trial court relied on in *Simon* to quash the subpoena specifically stated that the court's jurisdictional powers were limited to "any writ or process." *Id.* at 199-200, citing 12 P.S. §297. As noted above, section 5301 has no such limitation and allows a court to "render personal orders," which include subpoenas. Additionally, the subpoenaed party in *Simon* was in Florida and not a resident of Pennsylvania, making it easily distinguishable from Dow's circumstance here.

As stated in this court's findings and order, Dow's argument that it is not subject to the subpoena power of

this Commonwealth is misplaced because it succeeded to the prominent corporate presence in Pennsylvania of Rohm and Haas when acquired by Dow and, therefore, maintains residency in the Commonwealth. (April 26, 2010 findings and order, p. 1.) Thus, although Dow may be headquartered in Delaware, it is a resident of Pennsylvania for purposes of the court's power to "render personal orders" such as subpoenas.

For purposes of argument, were this court to assume that Dow was a defendant in this case, it is clear that Dow would not only be subject to the jurisdiction of this court as stated above, but also the venue of Philadelphia County for service purposes because Dow regularly conducts business in this county.

Pennsylvania Rule of Civil Procedure 2179 states in relevant part:

"[A] personal action against a corporation or similar entity may be brought in and only in:

"(1) the county where its registered office or principal place of business is located;

"(2) a county where it regularly conducts business;

"(3) the county where the cause of action arose; [or]

"(4) a county where a transaction or occurrence took place out of which the cause of action arose. . . ." Pa.R.C.P. 2179(a).

"In determining whether venue in an action against a corporation is proper on the ground that the corporate defendant regularly conducts business in the county in which it [is]sued, we must focus on the nature of the acts

the corporate defendant allegedly performs in that county." *Battuello v. Camelback Ski Corp.,* 409 Pa. Super. 642, 646, 598 A.2d 1027, 1029 (1991). More specifically, whether a company "regularly conducts business" in a particular county must be assessed both as to the "quality" and "quantity" of business contacts the company has with that county. In *Purcell v. Bryn Mawr Hospital,* 525 Pa. 237, 579 A.2d 1282 (1990), the Pennsylvania Supreme Court elaborated upon the standard:

" 'A single act is not enough,' while 'each case must depend on its own facts.' . . . 'Quality of acts' means 'those directly, furthering or essential to, corporate objects; they do not include incidental acts.' Quantity means those acts which are 'so continuous and sufficient to be general or habitual.' In combined form . . . the acts of the corporation must be distinguished: those in 'aid of a main purpose' are collateral and incidental, while 'those necessary to its existence' are 'direct.'" *Id.* at 244, 579 A.2d at 1285 (citations omitted) (quoting *Shambe v. Delaware and Hudson R. R. Co.,* 288 Pa. 240, 135 A. 755 (1927)).

Dow's corporate presence is undeniably within the Commonwealth of Pennsylvania and in Philadelphia County because of its large corporate office located at 100 Independence Mall West, Philadelphia, Pennsylvania. Dow regularly and continuously conducts business at this address as corporate officers and executive committees are housed here and perform business activities here.

In light of this court's analysis on jurisdiction and venue and Dow's obvious corporate presence located

therein, the law would not intend such a ridiculous result as having such a corporation subject to service of process in this Commonwealth and county, but not to subject to our subpoena powers. Thus, it is clear that the Commonwealth of Pennsylvania and Philadelphia County have subpoena power over Dow.

Dow next argues that this court is bound by the previous ruling of the Michigan courts, which previously held "that it would be inappropriately burdensome to require a non-party such as TDCC [Dow] to identify, assemble, and produce voluminous documentation of TDCC's contributions to vinyl chloride research spanning several decades . . . ." (Dow's memorandum in support of motion to quash, p. 13.) Dow also argues that plaintiffs subpoena is burdensome and should be quashed because it calls for expert testimony. (*Id.* at p. 14.) Dow's argument is not persuasive. Dow's argument relies upon facts that are not the facts in this case.

Plaintiff clearly states that its subpoena seeks only fact testimony, not discovery or documents from Dow. (Plaintiffs memorandum of law in opposition to Dow's motion to quash subpoena, p. 8.) The Michigan court was faced with a discernible issue involving the production of discovery to plaintiff regarding any and all communications and documents, written or electronic between Dow and several other entities from an extensive range of dates, some dating as far back as 1950 to the present. (Dow's memorandum in support of motion to quash, exhibit 4.) The Michigan court found the assembly and production of this documentation to be burdensome, but did not find the same as to any testimony. Therefore the holding of

the Michigan courts in not applicable in this case, as plaintiff seeks the factual testimony regarding Dow's reasons for reporting some, but not all, of the known brain cancers at three of their plants to Dr. Mundt, who was studying the incidence of brain cancer among vinyl chloride workers.

Plaintiffs requests are much more specific and narrower in scope than the Michigan case and, therefore, are easily distinguishable. Plaintiff's subpoena for trial testimony is also highly relevant to proving or disproving causation as to the ultimate issue in the case.

According to Pa.R.E. 402, evidence is considered relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. *Gemstar Corp. v. Department of Environmental Protection,* 726 A.2d 1120 (Pa. Commw. 1999). If the testimony of a witness is relevant to the elements to be proven, then the testimonial evidence must be permitted, unless otherwise excluded. *Carpenter v. Pleasant,* 759 A.2d 411, 414-15 (Pa. Commw. 2000). Any competent witness may be compelled to testify in any civil matter so long as the witness has personal knowledge of a relevant matter. Pa.R.E. 601, 602. The customary method of compelling the attendance of a witness is by means of a subpoena. Ra.R.C.P. 234.1(a). Rule 234.1(a) allows a party to request for the issuance of a subpoena, "commanding a person to attend and testify at a particular time and place." The subpoena may only be used to command a person to attend either at a trial or at the taking of deposition.

Pa.R.C.P. 234.1(b). If the witness is not testifying as an expert, the witness testimony in the form of opinions or inferences is limited to those rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. *Carpenter,* 759 A.2d at 415.

The factual testimony plaintiff sought by way of subpoena is extremely relevant to whether Mr. Branham's brain cancer was caused by exposure to vinyl chloride from Rohm and Haas contaminating groundwater and air where he lived. Plaintiff issued this subpoena for the testimony at trial of a Dow corporate designee, to provide factual testimony, not expert opinion, on whether certain brain cancer cases identified in Dow's internal case studies or its plants were in fact included in the industry wide studies, including Dr. Mundt's update. (Plaintiff's memorandum of law in opposition to Dow's motion to quash subpoena, p. 10.) The Mundt study is the only study which does not show a significant association between brain cancer among workers in the vinyl chloride industry. (Epidemiological study of men employed in the vinyl chloride industry between 1942 and 1972, final report, p. vii.) However, all other industry studies showed a statistically significant excess of brain cancers among the vinyl chloride workers. (Plaintiff's memorandum of law in opposition to Dow's motion to quash, p. 10.) Thus, the Mundt study will play an important role in proving or disproving causation at trial. It is plaintiff's theory that the data supplied to Mundt was manipulated by Dow and other chemical companies because Dow withheld other brain cancer cases of its workers from Dr. Mundt. (Plaintiff's memorandum of law in opposition to

Dow's motion to quash subpoena, exhibits H, I.) Plaintiff alleges that this was done in an attempt to skew the studies' conclusions of causation between brain cancer and vinyl chloride. (Plaintiff's memorandum of law in opposition to Dow's motion to quash, p. 11.)

Plaintiffs subpoena is not seeking discovery of documents to prove this theory, as they state that they already posses these documents that were obtained through the discovery process by way of federal subpoena and from researching public archives. The Dow designee will be questioned about the factual information provided by Dow which it has used as a basis for the epidemiological studies that have been referenced and relied upon by Rohm and Haas in developing its defense.

In light of the focus that will be put on the Mundt study and other industry studies to attempt to prove or disprove causation, it clear that Dow, through its corporate designee has relevant factual testimony that will help the jury understand and assign appropriate weight to the epidemiological studies presented, and, given its relevance and significance to both sides, it cannot be gainfully maintained that any burden exists for Dow to produce their corporate designee for this trial testimony. Plaintiff's subpoena is very specific and narrow in scope and well within Dow's ability to comply in light of Rohm and Haas's significant use of these studies.

Lastly, Dow argues that the subpoena should be quashed because it seeks disclosure of privileged and confidential employee health records and health information. (Dow's memorandum in support of motion to quash, p. 18.)

All of the individuals identified by plaintiff who will be the subject of the Dow designee's testimony have been identified through "personal identifiers" (*i.e.,* date of birth, date of hire, etc.) without any reference to name or personal health information. (Plaintiffs memorandum of law in opposition to Dow's motion to quash, exhibit E.) To determine whether a case was included in the Mundt study, the personal identifiers were gathered from company and public documents and cross-referenced with Mundt's study and public death records and newspapers. Thus, in order to determine whether someone is not part of the Mundt study but was referenced in an internal study or in a news study, one only needs to compare the individual's personal identifiers to the Mundt study to determine whether they have been included in this study. This does not require the release of any medical or private information of the worker. Therefore, this court finds that no confidential information is being sought or will be necessary to comply with this subpoena as the information that is to be produced can be done so in a manner to preserve the confidentiality of such medical information deserving of this protection. Further, it must be remembered that this court will retain jurisdiction to determine what will ultimately be given to the jury and may direct that the trial deposition be further redacted to protect all such valid considerations.

## CONCLUSION

Based on the foregoing, this court believes that it appropriately denied Dow's motion to quash the subpoena seeking to compel the appearance of a Dow corporate

designee for the purpose of securing trial testimony on the issue of how certain epidemiological studies were conducted.

---

EXHIBIT "A"

TERESHKO, *J.*, April 26, 2010—

FINDINGS AND ORDER

And now, April 26, 2010, these brief findings and order are intended to address the issues raised in defendant Rohm & Haas' motion to enforce the case management order and to preclude plaintiff from collaterally attacking epidemiology studies found under control no. 10033459 and non-party, Dow Chemical Company's[1] motion to quash plaintiff's subpoena found under control no. 10033269.

The focus of both motions concern the plaintiff's attempt to take the deposition of a representative of Rolm' and Haas/Dow for the purpose of securing trial testimony on the issue of how certain epidemiological studies were conducted.

Dow's argument that it is not subject to the subpoena power of the court is misplaced as it clearly is a corporate resident of this county as it succeeded to the prominent

---

1. Dow Chemical Company now owns Rohm & Haas and is not a defendant in this action. This current ownership creates an ostensible standing to lodge an objection to the subpoena.

corporate presence of Rohm and Haas which had been acquired by Dow.

Dow's motion to quash the subpoena on this basis and on the other asserted bases is denied.

The gravamen of Rohm and Haas' motion is its objection to plaintiff's decision to conduct a trial deposition of a fact witness in advance of the trial. In reaching its conclusion which follows below, this court considers the following facts which are relevant hereto.

This court has conducted extensive "Frye" motions during which time there was ample opportunity to be exposed to the various scientific theories of both sides and to be exposed to the evidentiary basis of these theories. This court further had the benefit of very competent legal memoranda with voluminous supporting scientific documentation, which allows this court to anticipate the issues and arguments to be advanced during the upcoming trial.

Defendant Rohm and Haas has manifested its intent to present evidence that would have the effect of contradicting plaintiff's evidence which is offered to show that there is a significant correlation between exposure to vinyl chloride and brain cancer. The defendants have relied upon the Mundt study in the past and will use the study during the course of this litigation to advance this proposition.

Plaintiff seeks to depose the corporate representatives from Rohm and Haas and/or Dow having certain knowledge of the statistical data which was supplied to the persons conducting the Mundt study. The asserted purpose for this is to allow defendant's experts to be effec-

tively cross-examined concerning their position, that there is either a weakened and or insignificant correlation between vinyl chloride exposure and the plaintiff's brain cancer.

Defendant's various arguments to the contrary, notwithstanding this request by plaintiff, would be permitted at trial if the circumstances were obtained and the request to do it in the form of a trial deposition is also permitted. Given the complexity of the upcoming trial such a methodology is considered to be judicially advantageous and expeditious, To deprive plaintiff of this would prevent a vigorous advocacy and deny plaintiff the right of cross-examination.

The argument that this falls into a case management enforcement issue is unavailing as this is a trial management issue.

The further argument that this is somehow a prohibited collateral attack upon epidemiological studies finds no purchase here as these defendants provided some of the information upon which these studies were founded and clearly plaintiff has raised a valid issue concerning the data supplied upon which the studies conclusions were in part based. Depriving the plaintiff of the ability to question the correctness or the completeness of the information supplied by the party/non-party motioning here, has no basis in fact or in law in this Commonwealth.

Therefore, defendant Rohm and Haas' motion is denied as is non-party Dow's motion to quash.

A corporate representative shall be locally produced within 15 days for the purpose described in plaintiff's

208

instant subpoena as found in exhibit B to plaintiff's response to the motion herein.

***

## ORDER

And now, May 5, 2010 , it is hereby ordered and decreed that a corrective entry is made to the court's order of April 26, 2010. The ninth paragraph is corrected as follows:

"Defendant's various arguments to the contrary notwithstanding, this request by plaintiff would be permitted at trial if the circumstances were obtained and therefore, the request to depose the witness in the form of a trial deposition should also be permitted. Given the complexity of the upcoming trial such a methodology is considered to be judicially advantageous and expeditious. To deprive plaintiff of this would prevent a vigorous advocacy and deny plaintiff the right of cross-examination.